01

02

03

04

05

06
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
07                              AT SEATTLE

08  TAUNTA M. McAHREN,                    )    CASE NO. C06-1752 RSL
                                          )
09           Plaintiff,                   )
                                          )
10      v.                                )    REPORT AND RECOMMENDATION
                                          )    RE: SOCIAL SECURITY
11  MICHAEL J. ASTRUE,                    )    DISABILITY APPEAL
    Commissioner of Social Security,      )
12                                        )
             Defendant.                   )
13  _____ )

14          Plaintiff Taunta M. McAhren proceeds through counsel in her appeal of a final decision

15  of the Commissioner of the Social Security Administration (Commissioner).  The Commissioner

16  denied plaintiff's application for Supplemental Security Income (SSI) benefits after a hearing

17  before an Administrative Law Judge (ALJ).  Having considered the ALJ's decision, the

18  administrative record (AR), and all memoranda of record, it is recommended that the decision be

19  affirmed in part and remanded in part for further administrative proceedings.

20  / / /

21  / / /

22  / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01

**FACTS AND PROCEDURAL HISTORY**

02      Plaintiff was born on XXXX, 1972.[1]  She did not finish high school and was an

03 unsuccessful candidate for a GED.  Plaintiff previously worked as a housekeeper.

04      Plaintiff protectively filed an application for SSI benefits on March 5, 2003. Her

05 application was denied at the initial level and on reconsideration, and she timely requested a

06 hearing, which was held on March 21, 2006. (AR 377-414.)  A decision was issued on June 23,

07 2006 finding plaintiff not disabled. (AR 15-23.)

08      Plaintiff timely appealed to the Appeals Council.  After considering additional evidence,

09 the Appeals Council denied the request for review, making the ALJ's decision the final decision

10 of the Commissioner. (AR 6-9.) Plaintiff timely appealed to this Court.

11

**JURISDICTION**

12      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

13

**DISCUSSION**

14      The Commissioner follows a five-step sequential evaluation process for determining

15 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

16 be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

17 engaged in substantial gainful activity since her alleged onset date.  At step two, it must be

18 determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff to have

19 severe impairments consisting of HIV and an affective disorder (depression).  Step three asks

20

21
[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the
22 official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  whether a claimant's impairments meet or equal a listed impairment. The ALJ found that

02  plaintiff's impairments did not meet or equal the criteria for any listed impairment. If a claimant's

03  impairments do not meet or equal a listing, the Commissioner must assess residual functional

04  capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to

05  perform past relevant work. The ALJ found plaintiff had the RFC to occasionally lift twenty

06  pounds and frequently lift ten pounds. She was found capable of understanding, remembering and

07  carrying out simple instructions, and making simple work-related decisions necessary to function

08  in unskilled work. She could respond appropriately to supervisors, coworkers and usual work

09  situations and deal with changes in a routine work setting not dealing with the general public. With

10  this functional capacity, the ALJ concluded that plaintiff could perform her past relevant work as

11  a home house cleaner as she performed it. If a claimant demonstrates an inability to perform past

12  relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant

13  retains the capacity to make an adjustment to work that exists in significant levels in the national

14  economy. Finding plaintiff not disabled at step four, the ALJ did not proceed to step five.

15      This Court's review of the ALJ's decision is limited to whether the decision is in

16  accordance with the law and the findings supported by substantial evidence in the record as a

17  whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more

18  than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

19  mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

20  (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's

21  decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

22  2002).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01    Plaintiff argues that the ALJ failed to evaluate all of her severe impairments, specifically

02 her borderline intellectual functioning, anxiety disorder with panic attacks, chronic fatigue, and

03 back pain.[2]   Plaintiff disputes the adequacy of the reasons given by the ALJ for finding her

04 complaints not credible, and for rejecting the testimony of her mother.  She also contends that the

05 ALJ erred in assessing the physical and mental demands of her past relevant work.

06    The Commissioner argues that the ALJ properly resolved conflicting medical evidence in

07 finding only plaintiff's affective disorder and HIV to be severe impairments. The Commissioner

08 contends that the ALJ provided clear and convincing reasons for not accepting all of plaintiff's

09 statements, and properly evaluated her mother's testimony.  The Commissioner argues that the

10 ALJ's determination that plaintiff could perform her past work was supported by substantial

11 evidence and should be upheld.

12    For the reasons described below, the undersigned concludes that the matter should be

13 affirmed in part and remanded in part for further administrative proceedings.

14                        <u>Determination of Severity of Impairments</u>

15    At step two of the sequential analysis, a claimant must make a threshold showing that her

16 medically determinable impairments significantly limit her ability to perform basic work activities.

17 *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. § 416.920(c).  "Basic work

18 activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §

19 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the

20

21        [2] In her reply, plaintiff withdrew her contention regarding back pain as a severe impairment
   and clarified that the assignment of error with regard to chronic fatigue was raised in the context
22 of the ALJ's assessment of plaintiff's credibility.  (*See* Dkt. 24 at 5.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01  evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's

02  ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security

03  Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of

04  groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54). The ALJ must consider "the combined

05  effect of all of the claimant's impairments on her ability to function, without regard to whether

06  each alone was sufficiently severe." *Id.*

07          The ALJ found that plaintiff had severe impairments consisting of HIV and an affective

08  disorder, noting that the occasional secondary infections related to plaintiff's HIV and her long

09  history of depression cause more than minimal limitations in her activities of daily living. (AR 17.)

10  Plaintiff argues, however, that the ALJ erred in not also finding severe her borderline intellectual

11  functioning, anxiety disorder with panic attacks, and chronic fatigue.[3]

12          1.      Borderline Intellectual Functioning:

13          The ALJ did not find that plaintiff's borderline intellectual functioning (BIF) met the

14  Listing of Impairments requirements for a conclusive presumption of disability at step three of the

15  sequential analysis, *see* 20 C.F.R. Ch.III, Pt. 404, Subpt. P, App. 1, § 12.05, "Mental

16  Retardation", and plaintiff does not dispute this.  Plaintiff does assign error, however, to the ALJ's

17  failure at step two to find her BIF severe.  The Commissioner argues in response that the ALJ

18  properly concluded that plaintiff's BIF and  anxiety disorder were  non-severe after applying the

19  special technique for mental impairments.

20

21

22          [3] *But see supra* n. 2.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01      Although the ALJ did not list plaintiff's BIF as a severe impairment at step two, it is clear

02 from the decision that the ALJ considered this condition and applied the appropriate analysis for

03 considering the severity of mental impairments. *See* 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1,

04 12.00 "Mental Disorders", 12.00, (I) ("We have developed a special technique to ensure that we

05 obtain, consider, and properly evaluate all the evidence we need to evaluate impairment severity

06 in claims involving mental impairments(s)".) That technique requires the ALJ to first determine

07 whether a medically determinable impairment exists, specifying the symptoms, signs, and

08 laboratory findings that substantiate the presence of the impairment, and then rate the degree of

09 functional limitation resulting from the impairment with regard to activities of daily living, social

10 functioning, concentration, persistence, or pace (using the five-point scale of none, mild, moderate,

11 marked and extreme) and episodes of decompensation (using the four-point scale of none, one or

12 two, three, four or more.)  The ALJ's decision must include a specific finding as to the degree of

13 limitation in each of these functional areas.  20 C.F.R. § 416.920a (e)(2).  If the impairment is

14 rated as severe but does not meet or equal any listing, then the claimant's RFC will be assessed.

15 As the regulations recognize:

16      Assessment of functional limitations is a complex and highly individualized process
        that requires us to consider multiple issues and all relevant evidence to obtain a
17      longitudinal picture of your overall degree of functional limitation.  We will consider
        all relevant and available clinical signs and laboratory findings, the effects of your
18      symptoms, and how your functioning may be affected by factors including, but not
        limited to, chronic mental disorders, structured settings, medication, and other
19      treatment.

20 20 C.F.R. 416.920a(c)(1).

21      As the ALJ correctly noted, the opinions concerning plaintiff's mental functioning "vary

22 greatly."  (AR 22.)  In situations where there is a conflict in medical evidence, it falls on the ALJ

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01  to "'determine credibility and resolve the conflict.'" *Thomas*, 278 F.3d at 956-57 (quoting *Matney*

02  *v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

03      The ALJ specifically addressed plaintiff's borderline intellectual functioning, reviewing the

04  medical evidence and rating the degree of functional limitations:

05      Doctors for the State Agency found that the claimant had borderline intellectual
        functioning and depression.  They found that the claimant had mild limitations in
06      activities of daily living and in maintaining social functioning.  They found moderate
        limitations in maintaining concentration, persistence or pace and no episodes of
07      decompensation.

08      Dr. Uldall completed a questionnaire that suggested that the claimant's impairments
        met the requirement of listing 12.04 [for Affective Disorders].
09
        The record suggests that the claimant has not consistently followed through with
10      treatment, and there is no indication of regular counseling.  Records show that the
        claimant has responded to medication, although she is often seen after she has not
11      been taking medication.  The claimant testified that she helped with shopping and with
        household chores.  She said that she bathed regularly and she appears well dressed
12      when she goes to the doctor.  I find that she has mild limitations in activities of daily
        living.  There is no reference in the record to the claimant having problems dealing
13      with others.  She tends to isolate, but she has also commented on volunteering at her
        daughter's school.  I find that she has mild limitations in social functioning.  She has
14      borderline intellectual functioning and some difficulty concentrating, but she is able
        to do serial three subtractions.  She reports that she was able to do housekeeping
15      work for years, so her intellectual functioning did not prevent this simple level of
        work.  I find that she has moderate limitations in concentration, persistence or pace.
16      Dr. Uldall suggested that the claimant had constant decompensation, but the claimant
        has only had one hospitalization.  She improved after that and was able to remain out
17      of the hospital even though she did not follow through with medication.  I find one
        episode of decompensation when she was hospitalized in 2003.  Dr. Uldall suggested
18      that the claimant has residual disease with such marginal adjustment that even a
        minimal increase in mental demands or change in environment would cause her to
19      decompensate.  The claimant travels between Bellingham and Seattle and changes her
        environment pretty regularly without decompensation.  Therefore, she is not likely to
20      decompensate with change in environment.

21      Dr. Uldall suggested that the claimant had marked limitations in concentration by
        referencing that she could not subtract serial sevens, but she had consistently been
22      able to subtract serial threes, suggesting that she can concentrate for at least simple

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01    and unskilled tasks.
                     . . .
02    Dr. Michel felt that the claimant might have deterioration with stress. Her focus and
      concentration as well as her pace appeared below average. He felt that the claimant
03    had limitations in her ability to perform complex tasks and possibly in some simple
      tasks. I agree with these findings and accept that the claimant is limited to unskilled
04    work.

05    . . . Mentally [the doctors for the state Agency] felt that the claimant could manage
      routine tasks but her symptoms were likely to limit her ability to perform complex
06    jobs or manage concentration for prolonged periods. She would likely have limited
      ability to manage change or set realistic goals for herself. Again I agree with these
07    conclusions.

08    Dr. Bartlett opined that the claimant was not a viable candidate for full time
      competitive employment in August of 2004. He said that she appeared to be severely
09    compromised developmentally. He noted that she had poor working recall and was
      sufficiently impaired that it raised the issue of AIDS related dementia. He also noted
10    that she had poor stamina and the combination of her cognitive, psychiatric, and
      physical concerns would eliminate her for any full time competitive job. He included
11    testing that showed that the claimant had low scores in memory and education, but
      the scores were almost always above the 10th percentile. The claimant had a Verbal
12    IQ of 77 and a Performance IQ of 92. Her vocabulary was the lowest scaled score.
      Dr. Bartlett seemed to think most of the claimant's limitations were developmental,
13    but the claimant testified that she had been able to sustain work as a housekeeper for
      years. He also seemed to consider her alleged physical impairments, giving greater
14    weight to her reported limitations in physical functioning than actually given by her
      treating physician.

15

16    (AR 17-18, 21-22, internal citations to the record omitted.) Also, although not finding plaintiff's

17    BIF severe at either step two or three of the sequential analysis, the RFC finding made by the ALJ

18    does take the condition into account as a non-exertional limitation:

19    After careful consideration of the entire record, the undersigned finds that the
      claimant has the residual functional capacity to lift twenty pounds occasionally and ten
20    pounds frequently. She can understand, remember and carry out simple instructions;
      make simple work-related decisions necessary to function in unskilled work; respond
21    appropriately to supervisors, coworkers and usual work situations and deal with
      changes in a routine work setting not dealing with the general public.

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01 (AR 18.)

02      Plaintiff attempts to argue that the regulations limit an ALJ to finding a mental impairment

03 to be non-severe only if a "none or mild" limitation is found in the first three functional areas and

04 "none" in the fourth area. (*See* Dkt. 18 at 13.) The regulation, however, is not phrased as a

05 limitation and, in fact, recognizes that the assessment is "a complex and highly individualized

06 process". 20 C.F.R. §416.920a (c)(1) and (d)(1).

07      Plaintiff also contends that in accepting Dr. Michel's opinion about plaintiff's limitations,

08 the ALJ erred in failing to include a pacing limitation in the RFC finding. Dr. Michels, however,

09 although noting that plaintiff's pace "appeared below average", did not suggest a pacing limitation

10 *per se*, but rather identified limitations in plaintiff's ability to perform complex tasks and possibly

11 in some simple tasks (AR 22), limitations which the ALJ incorporated into the functional capacity

12 finding (AR 18). The same functional limitation also addressed Dr. Uldall's observation that

13 plaintiff moved and responded more slowly than average. (AR 327.) Nor does plaintiff succeed

14 in demonstrating other error in the ALJ's consideration of Dr. Uldall's opinion regarding pace

15 limitations. Dr. Uldall endorsed a limitation in "concentration, persistence  or pace" (AR 346,

16 emphasis added), not "concentration, persistence and pace" as plaintiff suggests. Additionally,

17 plaintiff's argument that the ALJ erred in disregarding the State Agency doctors' opinions that her

18 BIF is a severe impairment is non-availing, as the single psychologist who completed the

19 Psychiatric Review Technique Form reached no such conclusion. (*See* AR 231-42.) Furthermore,

20 a doctor's opinion as to the existence of an impairment, even that of a treating physician, is not

21 binding on the ALJ. *Batson v. Commissioner*, 359 F.3d 1190, 1194 (9th Cir. 2004).

22      Finally, even if the ALJ erred in not analyzing plaintiff's BIF at step two of the sequential

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01  analysis (or her anxiety disorder, as discussed below), such error would be harmless, given the

02  extensive discussion at step four. *Lewis v. Astrue*, ___F.3d ___ , No. 04-17414, 2007 WL

03  2325018 at *2 (9th Cir. July 3, 2007, amended August 16, 2007).[4]  For this reason, and for the

04  reasons described above, plaintiff fails to demonstrate error with respect to her BIF.

05       2.    Depression:

06       Although not designated as a separate assignment of error, plaintiff argues that there is

07  irreconcilable conflict between the ALJ's step two finding that her depression was a severe

08  impairment, and the ALJ's conclusion that her limitations in activities of daily living were only

09  "mild". The regulations, however, anticipate that a mental impairment may be found severe at step

10  two, even if it does not meet or equal the requirements of the Listing of Impairments at step three.

11  20 C.F.R. § 416.920a (d)(2) and (d)(3).  A "step-two determination of whether a disability is

12  severe is merely a threshold determination of whether the claimant is able to perform his past

13  work." *Hoopai v. Astrue*, __F.3d ___, No. 05-16128, 2007 WL 2410178 at *3 (9th Cir. Aug. 27,

14  2007).  Plaintiff does not demonstrate error with regard to the ALJ's assessment of her depression.

15       3.    Anxiety Disorder:

16       Plaintiff also contends that the ALJ failed to consider her anxiety disorder at steps two and

17  three of the sequential analysis.  Specifically, plaintiff argues that the ALJ discussed Dr. Bartlett's

18  mental status exam (*see* AR 254-60), but did not state what weight was given to it, and did not

19

20

_____

21       [4] An unpublished decision in the same case addresses the consideration of other
     impairments at step two. *Lewis v. Astrue*, No. 04-17414, 2007 WL1975601 at *1 (9th Cir. July
22   3, 2007).

01 provide adequate reasons for rejecting it.[5]

02      An ALJ need not spell out the specific weight accorded a physician's opinion; rather, the

03 reviewing court can draw specific and legitimate inferences from the ALJ's opinion. *Magallanes*,

04 881 F.2d at 753.  Here, the ALJ summarized the facts and clinical evidence from the various

05 medical practitioners regarding plaintiff's anxiety disorder, stating her interpretation and making

06 findings.  With regard to Dr. Bartlett's examination, the ALJ noted:

07      Dr. Bartlett saw the claimant on July 7, 2004.  The claimant denied any recent
       substance abuse and she reported some degree of anxiousness, fatigue and achiness.
08     He diagnosed the claimant with a major depression, dysthmic disorder, anxiety
       disorder, and cognitive disorder.  He felt that the claimant could not work and
09     suggested that she needed help with taking her medication reliability [sic].

10      . . .

11      Dr. Bartlett opined that the claimant was not a viable candidate for full time
       competitive employment in August of 2004.  He said that she appeared to be severely
12     compromised developmentally.  He noted that she had poor working recall and was
       sufficiently impaired that it raised the issue of AIDS related dementia.  He also noted
13     that she had poor stamina and the combination of her cognitive, psychiatric, and
       physical concerns would eliminate her for any full time competitive job.  He included
14     testing that showed that the claimant had low scores in memory and education, but
       the scores were almost always above the 10th percentile.  The claimant had a Verbal
15     IQ of 77 and a Performance IQ of 92.  Her vocabulary was the lowest scaled score.
       Dr. Bartlett seemed to think most of the claimant's limitations were developmental,
16     but the claimant testified that she had been able to sustain work as a housekeeper for
       years.  He also seemed to consider her alleged physical impairments, giving greater
17     weight to her reported limitations in physical functioning than actually given by her
       treating physician.

18

19 (AR 20, 22, internal citations to record omitted.)  The ALJ also noted that plaintiff told Dr. Uldall

20 _____

21      [5] Plaintiff's argument that the ALJ erred in failing to consider her anxiety disorder at step
    two is non-availing, as the error, if any, would be harmless given the ALJ's consideration at step
22  four. *See Lewis*, 2007 WL 2325018 at *2.

01   that she had a few panic attacks, but they did not impact her functioning, and that Dr. Uldall did

02   not indicate any limitations caused by the panic attacks. (*See* AR 21-22).

03         Where not contradicted by another physician, a treating or examining physician's opinion

04   may be rejected only for "'clear and convincing'" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th

05   Cir. 1996) (quoting    *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).   Where

06   contradicted, a treating or examining physician's opinion may not be rejected without "'specific

07   and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-

08   31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). "'The ALJ can meet this

09   burden by setting out a detailed and thorough summary of the facts and conflicting clinical

10   evidence, stating his interpretation thereof, and making findings.'" *Magallanes*, 881 F.2d at 751

11   (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

12         The ALJ provided legally sufficient reasons for not accepting Dr. Bartlett's opinion,

13   pointing out conflicting medical evidence, and noting plaintiff's ability to maintain employment in

14   the past despite Dr. Bartlett's suggestion that her limitations were developmental.  The ALJ also

15   noted the tendency of Dr. Bartlett, a psychologist, to give greater weight to plaintiff's reported

16   limitations in physical functioning than her treating physician, a medical doctor, as a relevant factor

17   in considering Dr. Bartlett's opinion.  Furthermore, as the Commissioner points out, the ALJ

18   adequately accommodated Dr. Bartlett's opinion that plaintiff's "Anxiety Disorder, NOS, with

19   features of Social Phobia [would] impact her primarily in situations in which she anticipates that

20   she will be required to interact with others or in which there is significant performance scrutiny"

21   (AR 258), by restricting her to simple, unskilled work not dealing with the general public (AR 18),

22   noting that in her past work as a house cleaner, plaintiff would have had to deal with people in the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01  homes, but not with the general public. (AR 23.)  As such, plaintiff has not demonstrated error

02  with regard to the ALJ's consideration of Dr. Bartlett's opinions.

03                                              Credibility Assessment

04          Plaintiff argues that the ALJ failed to provide clear and convincing reasons  for rejecting

05  her testimony about the degree of her fatigue and limitations.  The ALJ discussed plaintiff's

06  testimony about her limitations as follows:

07          The claimant and her mother testified that the claimant had significant anxiety attacks,
            but the claimant denied this to Dr. Uldall, stating that she had a few panic attacks in
08          the months between visits but that they did not impact her functioning.  The claimant
            has not consistently followed through with treatment and she has not consistently
09          taken anti depressant medication.  While the claimant and her mother allege significant
            fatigue, the claimant's treating physician has urged her to increase her activity level
10          and has indicated that she is capable of light work.

11          The claimant has not been honest with the examining mental health professionals
            concerning substance use.  The record suggests that she continues to use marijuana,
12          a substance that could be causing some of her depressive symptoms.  Additionally she
            has abused opiate medication.  While she describes very limited social functioning, it
13          was a friend who took her to the hospital in 2003 when her depression was most
            severe.  She took Vicodin that was given to her by friends.  She attends church on an
14          occasional basis and she likes to care for her niece.  Dr. Uldall suggested that the
            claimant had marked limitations in concentration by referencing that she could not
15          subtract serial sevens, but she has consistently been able to subtract serial threes,
            suggesting that she can concentrate for at least simple and unskilled tasks.

16

17  (AR 21-22.)

18          In making a finding about the credibility of a claimant's reported symptoms, the ALJ need

19  not totally accept or totally reject the individual's statements.  Based on a consideration of all of

20  the evidence in the case record, the ALJ may find "all, only some, or none" of a claimant's

21  allegations to be credible.  SSR 96-7p (available at 1996 WL 374186 at *4).  In this case, the ALJ

22  did not reject plaintiff's testimony entirely, but found that her statements "concerning the intensity,

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01  duration and limiting effects of [her] symptoms are not entirely credible." (AR 21.)  The ALJ

02  accepted the opinion of Dr. Michel that plaintiff might have deterioration with stress, and took this

03  into account in determining plaintiff's RFC by limiting plaintiff to unskilled work. (AR 22.)

04        In considering a claimant's testimony, the ALJ may utilize "ordinary techniques of

05  credibility evaluation", such as prior inconsistent statements concerning the symptoms.[6] *Smolen*,

06  80 F.3d at 1284.  In fact, the consistency of a claimant's statements, both internally and with other

07  information in the case record,  is considered a "strong" indication of his or her credibility.  SSR

08  96-7p (available at 1996 WL 374186 *5).  Unexplained or inadequately explained failure to seek

09  treatment or to follow a prescribed course of treatment is also a relevant factor in evaluating a

10  claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). The ALJ "is entitled

11  to draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642

12  (9th Cir. 1982).

13        The Commissioner argues that the ALJ provided clear and convincing reasons supported

14  by substantial evidence for finding plaintiff's allegations regarding her limitations not entirely

15  credible.  Such evidence, the Commissioner points out, includes inconsistencies between plaintiff's

16  testimony (and that of her mother) about her anxiety attacks and what she told Dr. Uldall,

17  plaintiff's failure to follow through with treatment and to take medication, recommendations from

18  Dr. Gottlieb that plaintiff increase her activity level despite her allegations of significant fatigue,

19  inconsistencies in plaintiff's reported use of illegal substances to medical professionals, and greater

20  evidence of social functioning than that described by plaintiff.  (AR 21.)

21  _____

22        [6] A symptom is an individual's own description of his or her physical or mental
impairment(s).  SSR 96-7p (available at 1996 WL 374186).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01          Plaintiff argues that the ALJ failed to provide legitimate reasons for rejecting her

02   testimony about her panic attacks, citing a comment in a hospitalization record from 2003 that

03   plaintiff tends to minimize her symptoms and withdraw into herself rather than seek out help.

04   However, plaintiff takes the comment – which was part of a discussion of plaintiff's depressive

05   symptoms, not an anxiety disorder – out of context.  In fact, plaintiff denied any panic attacks

06   during this hospitalization. (AR 154.)

07          Plaintiff further argues that the ALJ's finding that she was not candid with her doctors

08   about her substance abuse is not supported by substantial evidence.  The Commissioner correctly

09   argues that conflicting or inconsistent testimony about substance abuse can contribute to an

10   adverse credibility finding.  *Robbins v. Social Sec. Admin.*,  466 F.3d 880, 884 (9th Cir 2006)

11   (citing *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999)).  However, in reaching this

12   conclusion, the ALJ did not make specific reference to the administrative record.  "We require the

13   ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may

14   afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331

15   F.3d 565, 569 (7th Cir. 2003).   Although the Commissioner provides citations to the

16   administrative record that could support this conclusion, "[w]e are constrained to review the

17   reasons the ALJ asserts." *Robbins,* 466 F.3d at 884 (citing *Connett v. Barnhart,* 340 F.3d 871,

18   874 (9th Cir. 2003)).

19          This is not a case where the Court should apply the "crediting as true" theory and credit

20   plaintiff's testimony as a matter of law.  *See Connett*, 340 F.3d at 876 (courts retain flexibility in

21   applying the "crediting as true" doctrine).  The ALJ cited other legally sufficient reasons,

22   supported by substantial evidence in the record, that could support a finding that plaintiff's

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01  testimony was not entirely credible.  However, because remand is necessary to address the ALJ's

02  finding as to plaintiff's past relevant work, as set forth below, the ALJ should, on remand,  provide

03  references to the portions of the administrative record that support the conclusion that plaintiff has

04  not been honest with the examining mental health professionals concerning substance abuse.

<u>Lay Witness Statement</u>

06      As part of plaintiff's argument that the ALJ erred in the determination of her credibility,

07  plaintiff also argues that the ALJ failed to properly analyze her mother's testimony.  The ALJ is

08  required to account for all lay witness testimony in the discussion of his or her findings. *Robbins*,

09  466 F.3d at 884 (citing *Lewis v. Apfel*, 236 F.3d  503, 511 (9th Cir. 2001)).  As long as "arguably

10  germane reasons for dismissing the family members' testimony" are noted, even if the reasons are

11  given elsewhere in the decision and the ALJ's determination is not specifically linked to the family

12  members' testimony, the ALJ's finding will be found to meet that standard.  *Lewis*, 236 F.3d at

13  512.

14      The ALJ discussed the testimony of plaintiff's mother that plaintiff had significant anxiety

15  attacks and lacked stamina. The ALJ contrasted this testimony with plaintiff's denial of significant

16  attacks to Dr. Uldall, and the recommendation by plaintiff's treating physician that she increase

17  her activity level and was capable of doing light work. (AR 21.)  Accordingly, substantial evidence

18  supports the ALJ's decision to discount the lay testimony of plaintiff's mother.

<u>Past Relevant Work</u>

20      The ALJ found that plaintiff's past relevant work as a house cleaner did not require the

21  performance of work-related activities precluded by her RFC. (AR 23.)  The ALJ noted that the

22  vocational expert ("VE") testified that the home housekeeper job as described in the Dictionary

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01 of Occupational Titles ("DOT") is classified as medium work, but was performed by plaintiff at

02 the light level and was unskilled. (AR 411.)

03       Plaintiff disputes the ALJ's summary of the VE's testimony.  Plaintiff contends that the VE

04 actually testified that plaintiff's past relevant work was medium level and semi-skilled.  Further,

05 plaintiff argues that the ALJ erred in finding that the only equipment that she operated was a

06 vacuum cleaner, and that a main duty of her previous work was to supervise other people. The

07 Commissioner argues that plaintiff misconstrues the VE's testimony, contending that the VE

08 actually testified that plaintiff's housekeeper job was equivalent to the light and unskilled position

09 of hotel/motel housekeeper.

10       The VE's testimony on this point is garbled.  Due to some interruptions by the ALJ and

11 the overly conversational manner in which the testimony was presented, it is impossible to clearly

12 determine which DOT position the VE was utilizing.  Furthermore, although plaintiff described

13 her job cleaning houses in her disability application form as requiring the utilization of "machines,

14 tools or equipment" and required supervising other people as a main duty (AR 75), the ALJ found

15 that the only equipment was a vacuum cleaner and concluded that plaintiff's dealing with other

16 people was only in the home, without eliciting any testimony or explanation from plaintiff on these

17 points.

18       The determination of a social security disability claimant's ability to perform past relevant

19 work "has far-reaching implications and must be developed and explained fully in the disability

20 decision.  Since this is an important and, in some instances, a controlling issue, every effort must

21 be made to secure evidence that resolves the issue as clearly and explicitly as circumstances

22 permit."  SSR 82-62 (available at 1982 WL 31386 at *3).  If the ALJ finds that plaintiff is capable

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01 of performing her past relevant work as she performed it, the ALJ should make an adequate record

02 as to the actual requirements of that work.  If the ALJ finds that plaintiff is capable of performing

03 her past relevant work as generally performed in the economy, the ALJ should obtain vocational

04 testimony to clearly establish the functional requirements of that work.

Conclusion

06         This case should be affirmed in part and remanded in part for further administrative

07 proceedings. On remand, the ALJ should provide references to the portions of the administrative

08 record that support the conclusion that plaintiff has not been honest with the examining mental

09 health professionals concerning substance abuse.  The ALJ should also develop and fully explain

10 the basis for the finding that plaintiff is capable of performing her past relevant work.

11         DATED this 13th day of September, 2007.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18